UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JEFF NOLAN,                    :
    Plaintiff,                 :
        vs.                    :    No. 3:06cv318(WIG)
CREDIT MANAGEMENT CORP.,       :
    Defendant.                 :
-------------------------------X

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This action arises under the Fair Debt Collection Practices Act, ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.* This Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

Plaintiff, Jeff Nolan, claims that Defendant, Credit Management Corporation, violated the FDCPA when it used false, deceptive, and misleading representations in the collection of a debt. Defendant denies that it violated any provision of the FDCPA and further denies that it harassed, threatened, or acted unfairly or deceptively.

The parties waived their right to trial by jury and consented to have a United States Magistrate conduct all proceedings in this case, including the trial of the case and ordering the entry of a final judgment (Doc. # 20). Thereafter, this case was transferred to the Undersigned for all purposes (Doc. # 23).

On October 29, 2007, this action was tried before the

Undersigned. Both sides, represented by counsel, presented witnesses and exhibits, and thereafter counsel submitted proposed findings of fact and conclusions of law.

Having considered all of the evidence presented at trial, as well as the arguments of counsel in their post-trial submissions, the Court hereby renders the following findings of fact and conclusions of law:

## Findings of Fact

1.  Plaintiff, Jeff Nolan, is a "consumer," as that term is defined by the FDCPA, 15 U.S.C. § 1692a(3).
2.  Plaintiff, a former truck driver, has been disabled since 1989 or 1990. His only source of income is Social Security Disability Income ("SSDI"). He is married to Deborah Nolan, who works for Webster Bank, where he and his wife have a joint checking account.
3.  Defendant, Credit Management Corporation, also referred to as "CMC," is a "debt collector," as that term is defined by the FDCPA, 15 U.S.C. § 1692a(6).
4.  John Nicholas Rich is Vice President of Credit Management Corporation. His wife is the sole shareholder of the corporation. Mr. Rich has been in the debt collection business for over ten years and handles all of the proceedings in small claims court for Defendant. He uses the name "John Nicholas" when signing collection letters on

2

behalf of Defendant.

5. Defendant purchases tertiary debt, that is, debt that at least two other debt collection agencies have owned and attempted to collect. Defendant's practice is to send one collection letter, wait thirty-five (35) to forty-five (45) days, and then file an action in small claims court to collect the debt. It is not Defendant's practice to make collection calls since these have already been made by the prior owners of the debt. Once a judgment is obtained from small claims court against the debtor, Defendant's practice is to send post-judgment interrogatories to the debtor and to all major banks, and to ascertain whether the debtor is employed and, if so, by whom.

6. On or about September 2, 2003, Defendant purchased a $757.66 debt owed by Plaintiff to Providian National Bank for credit card charges. This debt had previously been sold by Providian to Unifund CCR Partners, and Unifund then sold it to Defendant as part of a large package of debts.

7. On September 5, 2003, Defendant sent its first thirty-day demand letter to Plaintiff, which was a prerequisite to bringing a small claims action. Plaintiff testified at trial that he did not respond to this letter because he had already made payment arrangements with another debt collector, presumably one of the prior debt collectors on

this debt.

8.  On September 16, 2003, Defendant ran an Equifax report on Plaintiff, which showed that there were several other outstanding collection matters against him. It did not indicate that he was receiving SSDI.

9.  Plaintiff testified at trial that he owed money to several other creditors, that at least one creditor had obtained a judgment against him, and that he was receiving collection calls from three or four bill collectors.

10. Defendant filed a small claims writ and notice of suit against Plaintiff in the Connecticut Superior Court, Small Claims Session in the Judicial District of New Britain, on October 30, 2003. On November 25, 2003, Plaintiff filed an answer in which he admitted that he owed the debt but desired more time to pay the debt for the following stated reasons:

    > I ran into financial trouble; I'm on fixed income. I spoke to Credit Management Corp. twice and explained my situation and told them that around Dec. 2003 I would be able to start making payments - not a whole lot but something towards my balance and I never received an O.K. Just this (these papers) in the mail.
    > They offered a settlement that I could not afford at that time and said I broke promise that I never made.

    Plaintiff did not specifically mention that the source of his fixed income was Social Security disability payments.

11. On December 11, 2003, Plaintiff called Defendant and left a

message, offering to pay $20.00 per month by the fifteenth of every month in satisfaction of the debt. That same day, Defendant sent Plaintiff a "debtor settlement letter," signed by "John Nicholas," offering a payment plan of $20.00 per month starting December 20, 2003, and stating that if payment was received by that date, Defendant would notify the Court that an agreement had been reached, and Plaintiff would not have to appear in court.

12. On January 15, 2004, Defendant received a $20.00 money order from Plaintiff, which Plaintiff testified was his response to Defendant's letter of December 11, 2003.

13. On January 22, 2004, a judgment was obtained by Defendant against Plaintiff in the amount of $737.66, plus costs of $35.00.

14. Between January 15, 2004, and July 19, 2005, Defendant received six telephone calls from Plaintiff promising payment. No further payments were received during this time period.

15. On July 29, 2004, Defendant sent Plaintiff post-judgment interrogatories. Plaintiff did not respond to these interrogatories.

16. On June 13, 2005, Defendant learned through a Verifacts report that Plaintiff was not employed.

17. On June 17, 2005, Defendant obtained a Financial Institution

Execution Proceedings form from the Superior Court in New Britain, allowing it to make a demand for payment of the judgment by any financial institution in the county having an account of the judgment debtor.

18. On July 19, 2005, a Bank Execution was served on Webster Bank, N.A. A letter from Webster Bank dated July 20, 2005, was sent to Plaintiff notifying him that his account had been charged a service and process fee of $30.00 and that a hold had been placed against his account for $524.07. Attached to the letter was an Exemption Claim Form. This Webster bank account was a joint account, which Plaintiff held jointly with his wife. Plaintiff deposited his monthly SSDI checks into the account, which his wife used to pay certain household bills.

19. Plaintiff testified that he called Defendant and spoke with John Rich. He informed Mr. Rich that the attached funds were his Social Security disability benefits. Plaintiff states that Mr. Rich told him that in order for him to release the attachment, Plaintiff would have to agree to make some type of payment. Plaintiff agreed to pay $20.00, which he sent shortly thereafter. Mr. Rich denies ever having made this statement and denies having been aware that Plaintiff was receiving Social Security disability benefits prior to this telephone call.

20. On July 25, 2005, Plaintiff completed the Exemption Claim Form, indicating that he was claiming the full amount of the attached funds, $524.07, to be exempt because of "Social Security Disability." On August 11, 2005, the exemption was granted by agreement by the Superior Court. All funds were reinstated into Plaintiff's account except the $30.00 attachment fee.

21. On August 5, 2005, Plaintiff made a payment of $20.00 to Defendant by a money order dated August 3, 2005.

22. On November 2, 2005, Defendant sent Plaintiff a letter, stating:

> You have not responded to any of our previous attempts to contact you regarding payment.
>
> **We have a judgment against you**.
>
> Read the attached **SUPERIOR COURT** form carefully. Complete it and return it within 30 days.
>
> If you fail to return this form in 30 days, we can get an order of compliance from the court, bring you into Court for examination, and if necessary, have a Marshal bring you to court if you fail to appear.
>
> **We expect this form to be returned within the next 30 days**.
>
> **To avoid the above action, contact us to work out a settlement or payment plan. Please call 860-399-5531.**

(Bold, underlining, and large print in original). The letter was signed on behalf of Defendant by "John Nicholas" and stated in all capital letters at the bottom:

7

> **FEDERAL LAW REQUIRES ME TO DISCLOSE THAT THIS COMMUNICATION IS FROM A DEBT COLLECTOR.**
>
> **THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

(Bold in original). It is this letter that Plaintiff claims violated the FDCPA.[1] Attached to the letter were Post Judgment Interrogatories. Plaintiff answered these on November 11, 2005.

23. Plaintiff also testified that in every telephone conversation that he had with Mr. Rich, Mr. Rich threatened to have a state Marshal bring Plaintiff into court to answer questions. Mr. Rich also threatened that he was going to find Plaintiff's employer and garnish his wages. Mr. Rich denies that he ever threatened to contact Plaintiff's employer or to have a Marshal arrest Plaintiff.

24. Mr. Rich testified that he never intended to have a capias issued against Plaintiff. He has only done this once, against a different debtor, and it was a very unpleasant experience for him.

---

[1] Defendant argues at length that Plaintiff should not be allowed to rely on this letter in support of his FDCPA claim because it was not specifically referenced in Plaintiff's complaint and Defendant did not have notice of this particular alleged violation. Plaintiff listed this letter in the Joint Trial Memorandum dated February 2, 2007, and relied on it during the trial of this case nearly nine months later. Prior to trial, Defendant never filed a motion in limine to exclude this evidence and did not object to its introduction at trial. Therefore, the Court overrules Defendant's belated objection to this evidence.

25. Plaintiff asserts that Defendant violated the FDCPA when it threatened, in the November 2, 2005 letter, to "get an order of compliance from the court, bring [Plaintiff] into Court for examination, and if necessary, have a Marshal bring [Plaintiff] to court if [Plaintiff] faile[ed] to appear," and when John Rich made similar statements over the telephone to Plaintiff. Plaintiff asserts that these statements violated the FDCPA's prohibition against false, deceptive, or misleading representations by a debt collector because they did not accurately represent Connecticut's process for the issuance of a capias, and because Defendant never intended to take such action against Plaintiff.

<u>Conclusions of Law</u>

26. Initially, the Court finds that Plaintiff's testimony concerning the substance of his telephone conversations with John Rich was not entirely credible. Plaintiff acknowledged that he had several bill collectors calling him, that he was confused as to which communications regarding this particular debt were from Defendant and which were from prior debt collectors, that his financial situation was very stressful, and that after his account at Webster Bank was frozen he was very upset when speaking to Mr. Rich. His testimony concerning these conversations was overly generalized – e.g., that in every conversation Mr. Rich

threatened him that if he did not do something, the Marshals could come and get him and take him to court to explain this to the judge. Further, on cross-examination, defense counsel was able to establish that Plaintiff was confused as to his recollection of certain events.

27. Mr. Rich expressly denied Plaintiff's claims that he told Plaintiff he was going to find his employer and have his wages garnished, that he verbally threatened to have Plaintiff forcibly brought into court by a Marshal, and that he coerced Plaintiff into making a payment in order to get the attachment of his bank account released.

28. Plaintiff bears the burden of proof as to each of these claimed violations of the FDCPA. The only evidence supporting Plaintiff's claims involving telephone threats by Mr. Rich was Plaintiff's own testimony, which was directly contradicted by Mr. Rich and which testimony the Court found not entirely credible.[2] Therefore, the Court finds that Plaintiff has not carried his burden of proving a violation with respect to oral representations and statements made by Mr. Rich over the telephone.

29. In order to recover, however, Plaintiff need only show one violation of the FDCPA. Rosa v. Gaynor, 784 F. Supp. 1, 3

---

[2] That is not to say that the Court found Plaintiff's testimony totally lacking in credibility or that the Court found Mr. Rich to be entirely credible.

(D. Conn. 1989); Herbert v. Monterey Financial Services, Inc., 863 F. Supp. 76, 79 (D. Conn. 1994). Plaintiff claims that Defendant also violated the FDCPA by virtue of the letter sent him on November 2, 2005.

30. The FDCPA, 15 U.S.C. § 1692e, provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692e then sets forth a non-exhaustive list of conduct that violates this section, including "(5) the threat to take any action that cannot legally be taken or that is not intended to be taken." See Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993).

31. Congress enacted FDCPA in order "'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.' 15 U.S.C. § 1692(e)." Greco v. Trauner, Cohen & Thomas, L.L.P., 412 F.3d 360, 363 (2d Cir. 2005). To achieve this goal and to protect the most vulnerable population of debtors from abusive and misleading practices, the Second Circuit has construed the FDCPA to require that debt collection letters be viewed from the perspective of the "least sophisticated consumer." Id.

At the same time, the Court has preserved the concept of "reasonableness." Clomon, 988 F.2d at 1318-19. In this way, the Circuit's least sophisticated consumer standard is an objective analysis that seeks to protect "the naive from abusive practices," id. at 1320, while simultaneously shielding debt collectors from liability for bizarre or idiosyncratic interpretations" of debt collection letters. Greco, 412 F.3d at 363; Goins v. JBC & Assocs., P.C., No. 3:03cv636(JBA), 352 F. Supp. 2d 262, 269 (D. Conn. 2005). "Whether a particular debt collection letter is deceptive or misleading from the view point of the least sophisticated consumer is ordinarily a matter of law for the court to decide." Goins v. JBC & Assocs., P.C., No. 3:02cv1069(MRK), 2004 WL 2063562, at *2 (D. Conn. Sept. 3, 2004).

32. Here, the issues are twofold: (1) Would the least sophisticated consumer reasonably perceive Defendant's letter to be false, deceptive or misleading? and (2) Did Defendant threaten to take action that it did not intend to take?

33. In Connecticut state practice, discovery by a judgment creditor begins with the initial set of post-judgment interrogatories, which the judgment debtor has thirty (30) days to answer and return to the judgment creditor. Conn. Gen. Stat. § 52-351b(a). If the judgment debtor fails to

return sufficient answers or disclose sufficient assets or objects to the interrogatories, the judgment creditor may move the court for such supplemental discovery orders as may be necessary to ensure disclosure, including (1) an order for compliance with the interrogatories, or (2) an order authorizing additional interrogatories. Conn. Gen. Stat. § 52-351b(c). "The court may order such additional discovery as justice requires provided the order shall contain a notice that failure to comply therewith may subject the person served to being held in contempt of court." Id. Under Conn. Gen. Stat. § 52-397, a judgment debtor who fails to respond to the postjudgment interrogatories within thirty (30) days may be examined under oath in the court where the judgment was rendered. The judgment creditor may provide for the service of a subpoena on the judgment debtor for his appearance. Id. A judgment debtor's failure to appear in response to a subpoena "shall subject him to the provisions of section 52-143, concerning fine, damages, and capias." Id. Section 52-143(e) then provides that if a person, upon whom a subpoena has been served and to whom one day's attendance and fees for traveling have been tendered, fails to appear and testify without reasonable excuse, he shall be fined not more than $25.00 and pay all damages to the party aggrieved, and the court or judge, on proof of service of a

subpoena, "may issue a capias directed to some proper officer to arrest the witness and bring him before the court to testify." Conn. Gen. Stat. § 52-143(e). Thus, there are number of hurdles before a capias could issue to have a judgment debtor arrested and brought into court by a Marshal to testify.

34. Plaintiff argues in this case that Defendant's statement "If you fail to return this form in 30 days, we can get an order of compliance from the court, bring you into Court for examination, and if necessary, have a Marshal bring you to court if you fail to appear," was meant to intimidate Plaintiff and, therefore, the statement was deceptive and abusive. The Court agrees. Indeed, Plaintiff was specifically instructed in large, bold, and underlined typeface, "**To avoid the above action, contact us to work out a settlement or payment plan**." This language suggests to the least sophisticated consumer that the only way to avoid the threatened action, including being brought into court by a Marshal, is to work out a settlement or payment plan with the debt collector. See Gervais v. Riddle & Assocs., P.C., 479 F. Supp. 2d 270, 275 (D. Conn. 2007) (finding that a debt collector's statement "[i]f you want to resolve this matter, you must either pay the Total Amount Due . . . or call our law firm . . . and work out arrangements for

payment," suggested to the least-sophisticated consumer that legal action was about to be initiated and could only be averted by payment).

35. "Claims of deception are correctly handled by considering '[t]he clear import of the language, taken as a whole[.]'" Rosa, 784 F. Supp. at 4 (quoting Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22, 25 (2d Cir. 1989)). When the letter is read in its entirety, the Court finds that an unsophisticated debtor could reasonably interpret it to mean that being brought into court by a Marshal was far more imminent than State procedures allow. Even if Plaintiff failed to answer the interrogatories within thirty days, Defendant could not have obtained a capias and had Plaintiff arrested and brought into court by the Marshal until it (1) moved for an order of compliance, and, assuming Plaintiff did not then comply, (2) obtained an order requiring him to appear in court to be examined under oath, (3) served Plaintiff with a subpoena, containing the required statutory notification that failure to appear may result in the court ordering his arrest, and assuming Plaintiff fails to appear and testify without reasonable cause, (4) provided proof of service and obtained from the court a capias, directing the proper state officer to arrest Plaintiff and bring him to court to testify.

36. In Rosa, 784 F. Supp. at 4-5, the Court considered whether a letter sent by a debt collector violated § 1692e. The letter stated that if the debtor did not dispute the debt within thirty days

   > we may be forced to proceed with a lawsuit.
   > After judgment, any remedy may be filed
   > against you that is available to attorneys in
   > your area. This may include garnishment,
   > levy on real or personal property, or calling
   > you into court for a debtor's examination.
   > This is your final letter.

   The Court found "the list of possible remedies particularly intimidating, and particularly extraneous for any purpose other than bullying plaintiff." Id. at 5. The Court observed that an unsophisticated debtor, faced with such a list of dire consequences, could not help but feel unduly threatened. While the qualifying phrases "after judgment" and "available to attorneys in your area" made the possible consequences technically true, the Court found that they did nothing to make them less intimidating or to create a more accurate impression upon a layman. Id. "'[A] statement which is literally true may, nonetheless, be unlawfully deceptive.'" Id. (quoting Bailey Employment Sys. v. Hahn, 545 F. Supp. 62, 67 (D. Conn. 1982), aff'd, 723 F.2d 895 (2d Cir. 1983)).

37. Likewise, the fact that the threats in the instant letter were conditioned upon Plaintiff's failure to return the

post-judgment interrogatories in 30 days and "if necessary" have a Marshal bring him into court did not make this less intimidating, especially to a layperson unfamiliar with Connecticut legal procedures, and even more so to the least sophisticated consumer. As noted above, the letter concludes with the statement indicating to avoid this action, the debtor must contact the debt collector to work out a settlement or payment plan. Clearly there were other ways to avoid this action.

38. Accordingly, the Court finds that the November 2, 2005 letter from Defendant to Plaintiff violated the FDCPA, 15 U.S.C. § 1692e, by using a deceptive or misleading representation in connection with the collection of the debt.

39. Additionally, John Rich testified that he never intended to have a capias issued against Plaintiff. His threat to do something that he never intended to do also violated 15 U.S.C. § 1692e(5), which specifically prohibits the threat to take any action "that is not intended to be taken." Defendant argues that Mr. Rich should not be sanctioned for being a nice guy. But, Mr. Rich's after-the-fact pronouncement that he really never intended to take the action threatened in his letter – a fact unknown to Plaintiff at the time he received the letter – does not

17

lessen the threatening nature of his written words. The broad remedial purpose of the FDCPA is not concerned with the intent of the debt collector. Indeed, the FDCPA is a strict liability statute. <u>Bentley v. Great Lakes Collection Bureau</u>, 6 F.3d 60, 63 (2d Cir. 1993). Rather, its concern is with the likely effect of various collection practices on the mind of the least sophisticated consumer.

40. Accordingly, the Court holds that Defendant's November 2, 2005 letter violated the FDCPA.

41. The Court awards Plaintiff $1,000.00 in statutory damages for Defendant's violation of the FDCPA. 15 U.S.C. § 1692k(2)(A). Additionally, Plaintiff is entitled to recover reasonable attorney's fees and costs. 15 U.S.C. § 1692k(3).

<u>Conclusion</u>

For the reasons set forth above, the Court finds that Defendant's November 2, 2005 letter violated the FDCPA, 15 U.S.C. § 1692e, and awards Plaintiff statutory damages of $1,000.00, plus reasonable attorney's fees and costs. This is not a recommended ruling. The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.

SO ORDERED, this ___14th___ day of December, 2007, at Bridgeport, Connecticut.

                                      ___/s/ *William I. Garfinkel*___
                                      WILLIAM I. GARFINKEL
                                      United States Magistrate Judge